

FILED
LODGED
RECEIVED

JAN 18 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

M. Zayas
+13606021444
amiya.angel@hotmail.com

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

CASE NO.: 2:2022cv00018 MJP

MYRIAM ZAYAS,

PLAINTIFF,

V.

42 U.S.C. § 1983 DEPRIVATION OF RIGHTS
FREEDOM OF SPEECH- RETALIATION- EQUAL
PROTECTION- FAMILIAL ASSOCIATION- DUE
PROCESS

BRIAN WALTON (individual capacity),
SHEILA WILSON (individual capacity),
JUDITH RAMSEYER (individual capacity),
KELLY TAYLOR (individual capacity),
BRITTANY RAMOS (individual capacity),
SYLVIA HOWARD (individual capacity),

DEFENDANT(S).

*My name is Myriam Zayas and I am the mother and only parent of the child mentioned in this complaint. I certify and declare, under penalty of perjury, that everything stated herein, is the truth to the best of my knowledge. This court is governed by the laws of the state of Washington in the United States. Today's date is January 10th, 2022.*

I.     JURISDICTION

1.      This is an action for damages and injunctive relief brought pursuant to 42 U.S.C. § 1983, and Article III of the constitution, and the common laws and statutes of the State Washington. This court has jurisdiction over 28 U.S.C. §1331,§ 1332, § 1333, § 1338, § 1343,  and § 1349 . This court has supplemental jurisdiction over 28 U.S. Code § 1367.

2.      Venue is proper in this Court at the Seattle Federal District Court, under 28 U.S.C. § 1391(b) because the Defendants are residents of King County Washington.

3.      This action is an actual controversy in which the Plaintiff MYRIAM ZAYAS seeks a declaration of her rights under the constitution of the United States. Under 28 U.S.C. § § 2201-2202 this court may declare MYRIAM ZAYAS' rights and grant further necessary and proper relief thereon.

4.      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38-1 of the local rules for the Western District Court of Seattle, Plaintiff demands a trial by jury for all issues pleaded herein so triable. The Seventh Amendment extends the right to a jury trial to federal civil cases.

5.      In this action, plaintiff seeks declaratory and injunctive relief to end Child Protective Services discriminatory practices, and their continued widespread custom policy of forcing kindergarteners into Christianity, and compensatory and punitive damages.


        *I am not a lawyer, if anyone has a  question for me please also include how you want me to answer the question because in a few of my previous pro se complaints, I edited the complaint thinking that would answer their question. In the end they were dismissed because I "amended the complaint too many times." I only put a few case law in here because in my other cases the judges asked me how do I know this is a right?*

## II.   PARTIES

6.    Myriam Zayas is an individual person (hereinafter "Plaintiff") she is a resident of King County and resides in Kent Washington. The Plaintiff is a single mother of 3 children and 3 adults, ages 4 months, 2, 7, 19, 20, and 21 years old. The Plaintiff is currently parenting her 4 month old daughter, and 19 year old son in her home.

7.    At all times material hereto, Defendant Brian Walton an individual person (hereinafter "supervisor" "Defendant Walton"), is the Plaintiffs former social workers supervisor in 2014, and worked at Child Protective Services office in the city of Seattle, state of Washington. Upon further information and belief, he resides in King County, Washington. He is sued for damages in his individual capacity within the meaning of 42 U.S.C. Section 1983. Defendant Brian Walton acted under color of state law.

8.    At all times material hereto, Defendant Sheila Wilson an individual person (hereinafter "social worker" "Defendant Wilson"), was the Plaintiffs social worker in 2014, and worked at Child Protective Services office in the city of  Seattle, state of Washington. Upon further information and belief, she resides in King County, Washington. She is sued for damages in her individual capacity within the meaning of 42 U.S.C. Section 1983. Defendant Sheila Wilson acted under color of state law.

9.    At all times material hereto, Defendant Judith Ramseyer an individual person (hereinafter "Judge Ramseyer" "Defendant Ramseyer"), is the Superior Court judge for the Plaintiffs attempted dependency in the city of  Kent, state of Washington. Upon further information and belief, she resides in King County, Washington. She is sued for damages in her individual capacity within the meaning of 42 U.S.C. Section 1983. Defendant Judith Ramseyer acted under color of state law.

10.    At all times material hereto, Defendant Brittany Ramos an individual person (hereinafter "social worker" "Defendant Ramos"), is the Plaintiffs current social worker and works at Child Protective Services office in the city of  Kent, state of Washington. Upon further information and belief, she resides in King County, Washington. She is sued for injunctive relief, in her individual capacity within the

meaning of 42 U.S.C. Section 1983. Defendant Brittany Ramos acted under color of state law.

11.    At all times material hereto, Defendant Sylvia L. Howard an individual person (hereinafter "supervisor" "Defendant Howard"), is the Plaintiffs former social workers supervisor and works at Child Protective Services office in the city of Kent, state of Washington. Upon further information and belief, she resides in King County, Washington. She is sued for injunctive relief, in her individual capacity within the meaning of 42 U.S.C. Section 1983. Defendant Sylvia L. Howard acted under color of state law.

12.    At all times material hereto, Defendant Kelly Taylor an individual person (hereinafter "Attorney General" "AG Taylor"), is the Plaintiffs Attorney General for the Plaintiffs appeal to the Supreme Court of Washington. Upon further information and belief, she resides in King County, Washington. She is sued for injunctive relief, in her individual capacity within the meaning of 42 U.S.C. Section 1983. Defendant Kelly Taylor acted under color of state law.

*Undoubtedly it(fourteenth amendment) forbids any arbitrary deprivation of life, liberty or property, and secures equal protection to all under like circumstances in the enjoyment of their rights...It is enough that there is no discrimination in favor of one as against another of the same class... and due process of law within the meaning of the fifth and fourteenth amendment is secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of the government. Giozza v. Tiernan, 148 U.S. 657,662 (1893)*

*Section 1983 does not provide a statute of limitations. Federal courts are directed to follow the most analogous state statute of limitations pertaining to injuries to the rights of a person. Wilson v. Garcia, 471 U.S. 261 (1985).*

*The Equal Education Opportunities Act of 1974 provides that no state shall deny equal educational opportunity to an individual on the basis of race, color, sex, or national origin. Parents have a fundamental right to direct the education of their children, including the right to choose a private school.*

*in Pierce, "those who nurture [a child] and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." At their best, parents "recognize" what "additional obligations" their children are capable of and called to and then "direct" them to these ends. Pierce v. Society of Sisters (1925)*

## III. FACTS

### 2014

13.    In July 2014 Defendant Walton and his social worker Defendant Wilson created a court order ~~on~~ referencing the Plaintiffs fetus based on a drug screen completed while the Plaintiff was pregnant. The social worker documented in her child abuse report "Unborn Female Zayas.[1]" This drug screen was taken in the Plaintiffs 5th month of pregnancy. Defendant Wilson placed a hospital hold on the Plaintiffs child, even though the Plaintiff completed inpatient treatment and was clean when she gave birth.

MANDATED REPORTER is the assigned CFWS Social Worker Sheila Wilson from the King West office. She calls with allegations of NEGLIGENT TREATMENT of Unborn Female Zayas who has an estimated due date of 07/08/2014. The allegation is against mother Myriam Zayas (33). Myriam currently resides at Hope Place in Seattle. Myriam has two older children both DEPENDENT. Referrer provided the following information regarding the allegations:

14.    Defendant Walton lacked jurisdiction over the Plaintiffs fetus and gets no immunity for violating the Plaintiffs fundamental right to privacy, guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution, which protects against unwarranted invasions of privacy by federal or state entities, or arms thereof. This right extends to the privacy of the Plaintiffs medical information contained in medical records. Child welfare policy requires a child at the time of the act, and prohibits social workers make a disposition of child abuse on the mothers conduct during pregnancy.

15.    On or about July 10th, 2014, Defendant Wilson coerced the Plaintiff into signing a SCHO under the impression they would take her newborn if she did not sign. The Plaintiff endured 2 years of unwarranted harassment from Defendant Wilson who was responsible for forcing the Plaintiffs 14 year old out of the Plaintiffs life

---

[1] *In re L.J.B., 199 A.3d 868 (Pa. 2018). The Pennsylvania Supreme Court held that a mother's use of opioids while pregnant is not child abuse under the Child Protective Services Law (CPSL), which carries with it inclusion in a statewide database of child abuse perpetrators. Using statutory interpretation, the supreme court reasoned that the definition of "child," under the CPSL does not include a fetus or unborn child, and a person is not a perpetrator of child abuse unless there is a "child" at the time of the act.*

completely. Both of these Defendants violated the Plaintiffs rights to equal protection.
Defendant Wilson documented the Plaintiff gave birth to her baby high on drugs this
was a lie.

16.     Defendant Wilson violated the Plaintiffs first amendment rights to freedom of
speech ~~by telling the~~ instructing Defendant Wilson to tell the Plaintiff she was not
allowed to talk about the current dependency case during visits with her 14 year old
daughter. If the Plaintiffs speech is not violent, cursing, or harmful to her child then
the Plaintiff can say what she wants and the Defendants none of them can limit her
speech. There is no rule in child welfare that is written stating what parents are
allowed to talk about when they visit their children. CPS social workers have been
violating the Plaintiffs first amendment rights since 2009-2015. Then again 2020-2022. 8
years of First Amendment violations every week. 1,496 hours in 2009-2015. 416 hours in
2020-2022.

2020

17.     Defendant Howard has more than 22 criminal charges from the state of Florida
beginning in 2005 and ending in 2014. These charges range from check fraud to
misdemeanor driving offenses. She has been a CPS supervisor since 2017, she is the
supervisor that is the puppet master of Defendant Ramos, together they have created
false court documents filled with lies, and made up scenarios that come with zero
tangible evidence other than what they create out of their own brain. Defendant
Howard was not hired for her credentials in child welfare, or experience as a social
worker, clearly her criminal history came in handy for one thing and one thing only,
committing crimes.

18.     Defendant Howard, Ramos, and Ramseyer ~~have~~ continue to force the Plaintiffs
child into full time Christian School without the Plaintiffs consent, knowledge, or a
court order. From September 2020-December 2020 the Plaintiff was completely
unaware of her child attending Christian school. When the Plaintiff found out she
demanded they remove her child and the worker at the time stated he would get a
court order to keep her child in this Christian school. According to ~~their own~~ child

welfare policy all children in foster care must attend public school unless it is court ordered for them to attend private school.

### 4302A. Educational Services and Planning: Early Childhood Development, K-12 and post-Secondary

*All school-aged children in out-of-home placement will attend public school, unless they are court approved for home schooling, private school or to participate in an ALE instruction conducted 100% on-line in the child's placement setting. Children placed under a Voluntary Placement Agreement only require CA approval.*

The foster parents are paying for this private Christian school and it is the opposite religion of the Plaintiff, Defendant Howard documents the following:

> There has also been a lot of tension during visits in regards ▮▮▮'s Christian beliefs which contradict Ms. Zayas's non-religious beliefs.

19.    In October 2021, in the Defendant Howards court report. Defendant Howard and Ramos state that the Plaintiffs child is Christian, but this was not the religion she was taught at home, and this is against what the Plaintiff has asked these social workers since day one, not to teach her child Christianity because that is not their religion at home. Not only did they teach her Christianity she right now today still attends full time Christian school 40 hours a week when the Plaintiff told them to take her out of that school over a year ago. Defendant Ramseyer thinks this is all funny and has done nothing, she has not removed her child from that school and she has not asked the foster parents to stop taking her child to church. Defendant Howard intended on inflicting severe emotional distress to the Plaintiff when she created this document , repeatedly lying saying the Plaintiff did nothing when she knows the Plaintiff did everything.

20.    In December 2020, the Ombudsman stated it is the childs choice if they want to go to church, but the Plaintiffs child was 5 she did not have choices at the age of 5. The Plaintiffs child has been attending this Christian school for 2 years since September 2020 without the Plaintiffs permission. They violated the Plaintiffs rights to decide her childs education. The State's interest in universal education is not totally free from a balancing process when it impinges on other fundamental rights, such as those specifically protected by the Free Exercise Clause of the First

Amendment and the traditional interest of parents with respect to the religious upbringing of their children.[2]

21.     The Defendants ~~states~~ claim the Plaintiff gave them permission to attend this Christian school but the Plaintiff is not the only person responding from her computer and phone, so it is highly unlikely that SHE gave them permission to do anything. Furthermore, it is not she they have to get permission from they need a court order from a judge which they do not have.

22.     The Plaintiff found out she was in this school by accident, 4 months after she started attending, the Defendants never planned on telling the Plaintiff. She found out when a substitute visit monitor allowed her child to bring in her backpack to a visit. The Plaintiff looked inside her backpack and found homework with 20-50 questions and each one was "Who is God?" "Who is your lord and savior?" with a list of multiple choice answers, her daughter would circle the answer. Of course, the Plaintiff asked the Defendants to remove her child they ignored her and so did the Christian school when the Plaintiff contacted them, she told the school that is not her religion and could they please remove her child from their school? No response from anyone. The Plaintiff contacted the Ombudsman weeks later he replied and said they do need to remove the Plaintiffs child. They never did. Then they promised they would by the following school year, that never happened.

23.     Below is the foster agreement contract signed by the foster parents and written by the previous social worker who was sued and that was dismissed, signed on July 26th, 2020, 2 months later the Plaintiffs child started private Christian school.

> **Describe any needs that require immediate attention, or anything that the caregiver should know to make the transition easier for the child:**
>
> No immediate needs.
>
> ▮▮▮▮ is not of religious affiliation and the mother requests that she not participate in religious activities.

---

[2]Wisconsin v. Yoder(1972) The Court also ruled that a state statute that required Amish children to attend school past the eighth grade violated the substantive due process rights, and the religious freedom rights, of Amish parents to direct the educational and religious upbringing of their children. See Wisconsin v. Yoder.

*The law according to for foster parents: WAC 110-148-1520 (8) You must be sensitive to a child's religion or spiritual practices. You must provide adequate opportunity for religious or spiritual training and participation appropriate to the child's spiritual beliefs. You may not require any child to participate in practices against their beliefs.*

*Parents have a fundamental right to direct the education of their children, including the right to choose a private school.*

> 6. The court held an initial shelter care hearing on 3/17/20, at which the mother appeared and contested the need for shelter care. The court placed the child in licensed care. Trial is pending as to the mother, on the basis that:
>
> (a) On 2/07/2020, UW Medical Center in Seattle, WA, reports mother Myriam Zavas gave birth today to a term baby girl. Mother had inconsistent prenatal care and tested positive on 2/7/2020 for methamphetamines. Referrer reports the mother has so far made an adoption plan and the adoptive parent, is currently at the hospital. The adoptive family would like to take the infant home from the hospital.

24.    Above note the date 02.07.2020 is 2 days before the Plaintiff gave birth making her dirty drug screen fetus abuse[3], her child was born clean with zero health problems on her due date. The Plaintiffs 5 year old child was 40 miles away at the nannies when she took this drug screen. Also note inconsistent prenatal care of her "fetus" is nobody's business but the Plaintiffs, The Defendants do not harass women who terminate their pregnancy regarding how much prenatal care they get.[4]

25.    Nothing else matters after the judge loses jurisdiction all actions taken by all state officials beyond not having this requirement is 100% A CRIME. You read that note above and that is the first reason numbered accordingly "(a)" This means that is their best and most damning evidence. This is the Defendants original probable cause, the Plaintiff has proven the ultimate bar and that is the Defendants have NO probable cause.

_____

[3]*In re L.J.B., 199 A.3d 868 (Pa. 2018). The Pennsylvania Supreme Court held that a mother's use of opioids while pregnant is not civil child abuse under the Child Protective Services Law (CPSL), which carries with it inclusion in a statewide database of child abuse perpetrators. Using statutory interpretation, the supreme court reasoned that the definition of "child," under the CPSL does not include a fetus or unborn child, and a person is not a perpetrator of child abuse unless there is a "child" at the time of the act.*
[4]*equal protection to all under like circumstances in the enjoyment of their rights*

26.     Defendant Kelly Taylor presented evidence during the Plaintiffs appeal in 2021 that consisted of an email the Plaintiff sent where she was referring to a judge that had passed away. Kelly Taylor took this email and told the commissioner at the Supreme Court of Washington that the Plaintiff said she wanted to kill the judge. Kelly Taylor failed to include the attachment with the email which would have proved she was referring to a judge that had died many years ago. Her intention was to create false and misleading evidence, her actions were not a mistake and she violated the Plaintiffs Fourteenth Amendment rights to Equal Protection under the law. In re the Dependency of: A.C.-Z., Myriam Zayas, Appellant v. DCYF, Case#: 81980-1-I

27.     AG Taylor also approved the forged SCHO[5] and did not dispute it, or report the crime of forgery when submitting it for evidence when she knows the person who signed the Plaintiffs SCHO is not a commissioner for King County and was voted out in 2008, making the Plaintiffs SCHO null and void. AG Taylor is also aware of the date that the Plaintiff submitted a drug screen in 2020, and she knows that the Plaintiff was pregnant when she was accused of child abuse lacking the presence of a child only a fetus. AG Taylor is aware that her immunity does not include the *fetus* only the *child*. AG Taylor lacks jurisdiction over the Plaintiffs fetus, and purported to be acting in her official duties when she intentionally and with reckless disregard violated the Plaintiffs right to familial association, by furthering the crimes committed by a judge. AG Taylor knew or reasonably should have known her actions would violate the equal protection rights of the Plaintiff. Defendant Taylor also knows that the Plaintiff never had a SCH or a Fact Finding Trial.

28.     Defendant Ramos knows about the forged SCHO and did not dispute it, or report the crime of forgery when accepting the Plaintiffs case, she knows the person who signed the Plaintiffs SCHO is not a commissioner for King County and was voted out in 2008, making the Plaintiffs SCHO null and void. Defendant Ramos is also aware of the date that the Plaintiff submitted a drug screen in 2020, and she knows that the Plaintiff was pregnant when she was accused of child abuse, lacking the

[5]Shelter Care Hearing Order

presence of a child only a fetus. Defendant Ramos is aware that her immunity does not include the *fetus* only the *child*. Defendant Ramos lacks jurisdiction over the Plaintiffs fetus and purported to be acting in her official duties when she intentionally and with reckless disregard violated the Plaintiffs right to familial association. Defendant Ramos knew or reasonably should have known her actions would violate the equal protection rights of the Plaintiff. Defendant Ramos also knows that the Plaintiff never had a SCH or a Fact Finding Trial.

29.    Defendant Ramseyer knows about the forged SCHO and did not dispute, or report the crime of forgery when accepting it as an exhibit during the Plaintiffs trial in September 2020. Defendant Ramseyer knows the person who signed the Plaintiffs SCHO is not a commissioner for King County and was voted out in 2008, making the Plaintiffs SCHO null and void. Defendant Ramseyer is also aware of the date that the Plaintiff submitted a drug screen in 2020, and she knows that the Plaintiff was pregnant when she was accused of child abuse, lacking the presence of a child only a fetus. Defendant Ramseyer is aware that her immunity does not include the *fetus* only the *child*. Defendant Ramseyer lacks jurisdiction over the Plaintiffs fetus and purported to be acting in her official duties when she intentionally and with reckless disregard violated the Plaintiffs right to familial association. Defendant Ramseyer knew or reasonably should have known; her actions would violate the equal protection rights of the Plaintiff. Defendant Ramseyer also knows that the Plaintiff never had a SCH[6] or a Fact Finding Trial.

30.    Defendant Howard knows about the forged SCHO and did not dispute it, or report the crime of forgery when accepting the Plaintiffs case, she knows the person who signed the Plaintiffs SCHO is not a commissioner for King County and was voted out in 2008, making the Plaintiffs SCHO null and void. Defendant Howard is also aware of the date that the Plaintiff submitted a drug screen in 2020, and she knows that the Plaintiff was pregnant when she was accused of child abuse, lacking the presence of a child only a fetus. Defendant Howard is aware that her immunity

---

[6]Shelter Care Hearing

does not include the *fetus* only the *child*. Defendant Howard lacks jurisdiction over the Plaintiffs fetus and purported to be acting in her official duties when she intentionally and with reckless disregard violated the Plaintiffs right to familial association. Defendant Howard knew or reasonably should have known her actions would violate the equal protection rights of the Plaintiff. Defendant Howard also knows that the Plaintiff never had a SCH or a Fact Finding Trial.

31.    Judith Ramseyer could have at any time stricken the forged court orders on the Plaintiffs case, she did not and relied on herself attempting to convince the Plaintiff during trial that the Plaintiffs SCHO was not in fact forged:



Dated: _____ MAR 17 2020 _____    _____
                                        Commissioner
                                        Ann Danieli

32.    The Defendants each of them broke the law, and lose immunity for these state law violations Forgery RCW 9A.60.020. On March 17th 2020, the Superior Court Judge who approved the Plaintiffs child be removed by CPS, instructed the social worker to forge the SCHO due to her fear of being held accountable for removing the Plaintiffs child during Emergency Order 6, the beginning of lockdown. Each of the Defendants have covered this forgery, they continue to possess, utter, offer, and put off this forgery as true. This crime has injured and continues to injure the Plaintiff and her child. None of the Defendants have corrected the problem. Their immunity is for mistakes made by them, forgery can't be a mistake.

33.    The healthcare and education authorization form that was filed on the day the SCHO was filed was also forged with the name of a person the Plaintiff has never met in her life.

34.    Defendant Ramos & Howard violated the Plaintiffs First Amendment rights to freedom of speech by telling the Plaintiff she is not allowed to talk about the current dependency case during visits with her 7 year old daughter. If the Plaintiffs speech is not violent, cursing, or harmful to her child then the Plaintiff can say what she wants

and the Defendants none of them can limit her speech. None of the Plaintiffs speech is harmful to her child.

35.    Judge Ramseyer thinks she has jurisdiction over the Plaintiffs fetus. When a judicial officer acts entirely without jurisdiction, or without compliance with jurisdiction requisites, she may be held civilly liable for abuse of process even though her act involved a decision made in good faith that she had jurisdiction.[7]

> No other person has been identified or come forward to claim a paternal interest in the child ████ ████-Zayas, now age 6.  The unknown father and/or anyone else claiming a parental interest in the child is not capable of adequately caring for the child.

This statement above is how Defendant Ramseyer continues to hold the Plaintiffs child without the Plaintiffs signature by placing the blame of defective parenting on the missing father. Because the unknown father cannot adequately care for the child Defendant Ramseyer is able to default the dependency order to a father, and does not need the Plaintiffs signature.

36.    The Defendants each of them have violated the Plaintiff's federally protected civil rights under the First Amendment of the US Constitution, including the Plaintiff's right to redress her government without fear of retaliation. Their retaliation is right now and has been, severing an intimate association between the Plaintiff and her child. The Plaintiffs right to freedom of speech during her court ordered visitation, the new law under RCW Washington state senate bill number 1194 which became effective in July of 2021 2 states the Defendants are not allowed to monitor visits anymore unless they obtain a court order from a judge that says that parent is dangerous to the child.

37.    The Plaintiff filed multiple lawsuits in June 2020 her writing is protected speech, the Defendants have always lacked probable cause completely. The Plaintiff has sued the social workers for being racist against her for more than 15 years, they have been actively retaliating because of her filing these lawsuits. The Plaintiff has had a newborn baby in her care since Sept 9th, 2021. Defendant Ramos stated in her

---

[7]U.S. Fidelity & Guaranty Co., 217 Miss. 576, 64 So. 2d 697

1  court report in October 2021, that the Plaintiff does not possess the skills to parent a 7
2  year old. However she is capable of parenting a newborn.
3  38.    Remedial efforts are required on the part of the Defendants in order to succeed
4  in defending themselves in a section 1983 case, if the facts alleged are proven they
5  must have admitted they made a mistake and began trying to fix their mistakes,
6  otherwise they only prove their actions were at all times intentional and evil. *The state*
7  *officials immunity does not cover intentional acts, they are only immune for "mistakes"*
   *they made.*
8
9  39.    In late September 2020, Defendant Ramseyer accepted the perjured testimony
   of the Plaintiffs childs kindergarten teacher during the Plaintiffs dependency trial,
10 and she also stated that the Plaintiff did none of the services asked of her during the
11 Plaintiffs trial. Her actions and those of the social workers are retaliation. 89% of the
12 evidence used against the Plaintiff at her trial were her written pro se lawsuits and
13 emails she sent to the state officials saying she would sue them. Defendant
14 Ramseyer lost immunity lacking jurisdiction when she took over the Plaintiffs case.
15 She also committed a crime called covering forgery. Defendant Ramseyer continues
16 to violate the equal protection rights of the Plaintiff. These rights are clearly
17 established in the Fourteenth Amendment of the United States Constitution.
18 40.    The Defendants actions account for repeat injury and the Plaintiff has children
19 young enough to worry the Defendants will be back and she will need the damages to
20 pay for legal help to get them away from her and her children. The Defendants have
   never in history proved she abused any of her children, their harassment is baseless
21 and unwarranted. The Defendants wonder why the Plaintiff will not redo what they
22 say over again but they continue to remove visits and force her child into the opposite
23 religion, she did nothing to deserve this they went above the bounds of their lawful
24 authority. At all times relevant to this complaint each of them acted under the color of
25 law.
26 41.    This is not the first time Child Protective Services has forced the Plaintiffs
27 children into religion this also occurred in 2009-2015 with her 6 and 8 year old children.
28 At no time did the social workers ask if the Plaintiff had a religion. Due to the fathers

religious beliefs the Plaintiff can say that her children may have been forced into religion regardless. However, this child she is the only parent there is no father to force religion onto her now 7 year old daughter. This has substantially damaged the Plaintiffs authority over her child. The foster parent was told "If it is in the childs best interest" then she can attend Christian school. Apparently Christianity is the "best" religion. The Plaintiff has taught her daughter evolution over fairy tales. Her child remembers nothing she was taught and attempting to teach her these while at visits has proved impossible since the Defendants control what the Plaintiff says during her court ordered 2% of the week with her child.

## III.    FIRST CLAIM FOR RELIEF- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41.    Plaintiff re-alleges and re-pleads all of the allegations in paragraphs 1–40 of this Complaint and incorporate them by reference.

42.    The Defendants each of them perform the public functions providing foster and adoptive placement and care for children who are dependents of the courts of the State of Washington.

43.    The Defendants perform these public functions using federal, state, and county funds, also from federal grants.

44.    The Defendants each of them acted with reckless disregard and deliberate indifference to the federally protected civil rights and privacy of the Plaintiff. Each of them committed a misuse of power, possessed by virtue of state law, and made possible only because the wrongdoer was clothed in the authority of state law.

45.    The Defendants each of them knew, or reasonably should have known that their actions violated the federally protected rights of the Plaintiff and her child. Their actions went above the bounds of their lawful authority. At all times relevant to this complaint the Defendants acted under the color of state law

46.    This removal which occurred in March 2020 has damaged the Plaintiff, after she gave birth to a perfectly healthy child and chose adoption for this child, the social

workers still removed her 5 year old after she agreed to cooperate with them. The Plaintiff is now back on her antipsychotic medication Seroquel, she takes this medication 4x a day. This is a direct and proximate result of the Defendants unlawful removal of her 5 year old child during the pandemic. The Plaintiff has never in her life lost as much weight as she did after they illegally seized her 5 year old. Their case was built on the Plaintiffs reaction and multiple lawsuits.

## IV.    SECOND CLAIM FOR RELIEF- FIRST AMENDMENT RIGHTS- RETALIATION- FREEDOM OF SPEECH- 42 U.S.C. § 1983

47.    Plaintiff re-alleges and re-pleads all of the allegations in paragraphs 1–46 of this Complaint and incorporate them by reference.

48.    The Defendants perform the public functions providing foster and adoptive placements, care, and services for children and their families who are dependents of the courts of the State of Washington.

49.    The Defendants perform these public functions using federal, state, and county funds, also from federal grants.

50.    The right to freedom of speech allows the Plaintiff to express herself without government interference or regulation. The Supreme Court requires the government to provide substantial justification for the interference with the right of free speech where it attempts to regulate the content of the speech.

51.    The First Amendment also provides a possible cause of action. Courts have recognized that the First Amendment protects the fundamental right to intimate association, which includes the familial association between parents and children.[8]

---

[8]Doe v. Fayette County Children and Youth Servs., No. 8-823, 2010 WL 4854070, *18–19 (W.D. Pa. Nov. 22, 2010); Behm v. Luzerne County Children and Youth, 172 F.Supp.2d 575, 585 (M.D. Pa. 2001).

## V.  THIRD CLAIM FOR RELIEF- FOURTEENTH AMENDMENT RIGHTS- EQUAL PROTECTION- <u>DUE PROCESS</u>- FAMILIAL ASSOCIATION- 42 U.S.C. § 1983

52.    Plaintiff re-alleges and re-pleads all of the allegations in paragraphs 1–51 of this Complaint and incorporate them by reference.

53.    The Defendants perform the public functions providing foster and adoptive placements, care, and services for children and their families who are dependents of the courts of the State of Washington.

54.    The Defendants perform these public functions using federal, state, and county funds, also from federal grants.

55.    <u>Substantive due process, of the Fourteenth Amendment protects the Plaintiffs right to direct the educational upbringing of her child.</u>

56.    The Plaintiff has a cause of action for a violation of her federally protected rights to be treated equally under the law, her right to not be served different pains and punishments because of her race, gender, religion. These rights have been clearly established under the Equal Protection Clause of the Fourteenth Amendment in the US constitution and the Civil Rights Act, 42 U.S.C. § 1983.

## VI.  FOURTH CLAIM FOR RELIEF- DEPRIVATION OF RIGHTS UNDER THE COLOR OF LAW- 42 U.S.C. § 1983

57.    Plaintiff re-alleges and re-pleads all of the allegations in paragraphs 1–56 of this Complaint and incorporate them by reference.

58.    The Defendants perform these public functions providing foster and adoptive placements, care, and services for children and their families who are dependents of the courts of the State of Washington.

59.    The Defendants perform these public functions using federal, state, and county funds, also from federal grants.

60.     The Defendant under color of any law, statute, ordinance, regulation, or custom, willfully subject the Plaintiff and her children in Washington state, to the deprivation of any rights, privileges, or immunities secured and protected by the Constitution and laws of the United States.

61.     The Plaintiff has a cause of action for violation of her constitutional federally protected rights in the constitution under the Civil Rights Act, 42 U.S.C. § 1983. The Plaintiff and her child were restrained in her liberty by the Defendants actions. The Defendants acted under the color of state law to deprive the Plaintiff of her federally protected civil rights.

## VII.  INJURIES

62.     The Defendants, each of them, acted with reckless disregard, and deliberate indifference, at all times related to this complaint. As a direct and proximate result of the Defendant's civil rights violations, including her rights to Familial Association, Equal Protection, the First Amendment rights to freedom of speech, Fourteenth Amendments of the US constitution, The Plaintiff was injured emotionally, mentally, financially, & this injury is permanent. The Plaintiff has endured and will continue to endure these injuries, which have caused and will continue to cause past, present, and ongoing costs, taking up time in her life, an inconvenience. These injuries she has suffered have also caused damage to the Plaintiff mentally resulting in confusion, anger, pain, fear, depression, rejection, mental anguish, severe emotional distress, suicidal ideation, fright, anxiety, sadness, severe trauma, mental health diagnosis, medication management. The Plaintiff suffered and continues to suffer from physical pain, mental health issues related to depression, post-traumatic stress disorder, weight loss, lost birthdays, lost holidays, broken family bonds with relatives. The Plaintiff is due to incur past, present, and ongoing legal costs and attorneys' fees.

63.     The Plaintiffs child is now a full Christian and has lost respect for her mother's beliefs completely she thinks her mother the Plaintiff is going to hell for not believing in Jesus and gets so upset she will literally start hitting her mother when her mom

talks about what she was taught at home. The Defendants have damaged the authority the Plaintiff once had over her child that she gave birth to and they have no right forcing a 5 year old into religion for 40 hours a week, that is not giving a child a choice and is surely not respecting the rights of the Plaintiff who has not lost her parental rights. This forced conversion is settled and going to be next to impossible to remove from her child.

64.    The Defendants collected $600 per month in child support and now they are collecting title funding in the name of the Plaintiffs child all the while forcing her child into the opposite religion as the Plaintiff. Removing her child under the assumption that they govern her mother's fetus. Lacking jurisdiction completely and never having probable cause.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Myriam Zayas requests' judgement in her favor:

62.    Awarding the Plaintiff actual damages in the amount to be proven at trial.

63.    Awarding the Plaintiff economic damages in the amount to be proven at trial.

64.    Awarding the Plaintiff non-economic damages in the amount to be proven at trial.

65.    Awarding the Plaintiff declaratory damages in the amount to be proven at trial.

66.    Awarding the Plaintiff special damages in the amount to be proven at trial.

67.    Awarding the Plaintiff compensatory damages in the amount to be proven at trial.

68.    Awarding the Plaintiff statutory damages in the amount to be proven at trial.

69.    Awarding the Plaintiff nominal damages in the amount to be proven at trial.

70.    Awarding the Plaintiff punitive damages in the amount to be proven at trial.

71.    Awarding the Plaintiff contemptuous damages in the amount to be proven at trial.

72.    Awarding the Plaintiff incidental damages in the amount to be proven at trial.

73.    Awarding the Plaintiff treble damages in the amount to be proven at trial.

74.    Awarding the Plaintiff liquidated damages in the amount to be proven at trial.

75.    Awarding the Plaintiff general damages in the amount to be proven at trial.

76.    Awarding the Plaintiff temperate damages in the amount to be proven at trial.

77.    Awarding the Plaintiff moral damages in the amount to be proven at trial.

78.    Awarding the Plaintiff disgorgement damages in the amount to be proven at trial.

79.    Awarding the Plaintiff exemplary damages in the amount to be proven at trial.

80.    Grant all other relief as the Court may deem just and proper.

81.    <u>The Plaintiff is asking for $500 million in punitive damages, calculated the amount of child support paid by the Plaintiff @ $600 per month while the government forced her child into Christianity.</u>


I.    CERTIFICATION AND CLOSING

*Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.*


A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


**Date of signing:**

1

2

3

4   Pro Se Plaintiff Signature: *Myriam Zayas*

5   Printed Name and email: _____

6            01/13/22

7            amiya.angel@hotmail.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



District Court
22-cv-00018
700 Stewart Street
Seattle WA 98101

Myriam Zayas
27369 129th Pl.
Kent WA 98030

FILED
LODGED
RECEIVED

MAIL

JAN 18 2022

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY          DEPUTY