Exhibit 1

☐ King West ☐ OICW
☐ West Seattle ☐ MLK
☐ King East ☒ King South East
☐ King South West ☐ Adoptions/BRS

FILED
2020 MAR 16
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 20-7-00666-0 KNT

**Superior Court of Washington**
**County of King Juvenile Court**

Dependency of: ACZ

D.O.B.: ACZ

No: 20-7-00666-0 KNT

**Amended Dependency Petition (DPP)**

## I. Basis

I represent to the court the following:

### 1.1 Petitioner

☒ DCYF by (name) Kelsey Owens
☐ (Name) _____

### 1.2 Child alleged to be dependent:

| Name | ACZ |
|---|---|
| Date of Birth | ACZ |
| Home Address | ACZ |

### 1.3 Parent(s) or Legal Guardian(s):

|  | ☒ Mother | ☒ Father ☐ presumed ☒ ~~alleged~~ |
|---|---|---|
| Name | Myriam Zayas |  |
| Date of Birth |  |  |
| Marital status | ☒ single ☐ married ☐ other | ☒ ~~single~~ ☐ ~~married~~ ☐ ~~other~~ |
| Driver's License or Identicard (# and State) |  |  |
| Home Address |  |  |

|  | ☒ Father ☐ presumed ☐ alleged | ☐ Custodian/Legal Guardian |
|---|---|---|
| Name | Unknown | 4 |
| Date of Birth | Unknown |  |
| Marital status | ☐ single ☐ married ☐ other |  |
| Driver's License or |  |  |

Dependency Petition (DPP) – Page 1 of 8
WPF JU 03.0100 (10/24/2019) – JuCR 3.3; RCW 13.34.030, .040

| Identicard (# and State) | |
|---|---|
| Home Address | |

| | FOR OFFICIAL USE ONLY<br>Juv. Ref. No:_____ |
|---|---|

1.4 **Child's Indian Status:**

☒ Based upon the following, the petitioner does not have reason to know the child is an Indian child as defined in RCW 13.38.040 and 25 U.S.C. § 1903(4), and the Federal and Washington State Indian Child Welfare Acts do not apply to this proceeding:

The child is not enrolled or eligible for enrollment in any federally recognized tribe. The mother denied any Native American ancestry or eligible for membership of any Federally Recognized Tribe. There is no reason to being the alleged father has any Native American ancestry or eligible for membership of any Federally Recognized Tribe.

☐ Based upon the following, the petitioner knows or has reason to know the child is an Indian child as defined in RCW 13.38.040 and 25 U.S.C. § 1903(4), and the Federal and Washington State Indian Child Welfare Acts do apply to this proceeding:

_____

☐ The petitioner has made the following preliminary efforts to provide notice of this proceeding to all tribes to which the petitioner knows or has reason to know the child may be **(1)** a member or **(2)** eligible for membership if the biological parent is also a member:

_____

1.5 **Dependency:** The child should be declared dependent according to RCW13.34.030(6) as follows:

☐ (a) the child has been abandoned as defined in RCW 13.34.030;
☐ (b) the child is abused or neglected as defined in chapter 26.44 RCW; or
☒ **(c) the child has no parent, guardian or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.**

1.6 **Allegations:** The allegation of Dependency is based on the following facts:

1. **Myriam Zayas (DOB: 11/05/1980) is the biological mother of the children: JZ (DOB: [redacted]), MBZ (DOB: [redacted]), ACZ (DOB: [redacted]), and CZ (DOB: [redacted]).** [redacted] (DOB: [redacted]) is the biological father to JZ. JZ was legally free as a youth on 04/21/2015. [redacted] (DOB: [redacted]) is the biological father to MBZ and is listed on the birth certificate. [redacted] (DOB: [redacted]) is the alleged father of ACZ and is not listed on the birth certificate. There is no listed father for CZ. CZ was adopted at birth through Family Law Services and is not in Ms. Zayas care.

2. [redacted] was dismissed from the previous dependency (14-7-01695-4 SEA) on 12/31/2014 after paternity testing established that he is not the biological father of ACZ.

Dependency Petition (DPP) – Page 2 of 8
WPF JU 03.0100 (10/24/2019) – JuCR 3.3; RCW 13.34.030, .040

3. ACZ was previously dependent under cause number 14-7-01695-4 SEA. Her dependency was dismissed in October 2015 after a successful return home to her mother.

4. The Department of Children, Youth, and Families (DCYF) is requesting a shelter care hearing for child ACZ. Ms. Zayas is the primary parent providing care for ACZ and is actively using methamphetamines. The safety threat is the following: the caregiver will not or cannot control their behavior and their behavior impacts child's safety.

5. On 2/9/2020, the Department received an intake regarding a newborn baby by Ms. Myriam Zayas. Mandatory Referrer (Ref) at UW Medical Center in Seattle, WA, reports mother Myriam Zayas gave birth today to a term baby girl. Mother had inconsistent prenatal care and tested positive on 2/7/2020 for methamphetamines. Mother has an extensive CPS history and is only parenting her 5-year-old daughter, ACZ. Referrer reports the mother has so far made an adoption plan and the adoptive parent, is currently at the hospital. The family has been working with Family Law Solutions. Baby is being observed for NAS but she is too young to have symptoms. The adoptive family would like to take the infant home from the hospital. Referrer reports both the bio mother and adoptive parent are worried about CPS involvement. This worker clarified the risk/concern would be mother taking baby home with her, not if the adoption goes through.

6. On 02/18/2020, Investigator Owens completed Subject Interview with Ms. Zayas. Ms. Zayas reported criminal of manufacturing from 2000-2002. Mother reported that one time at Purdy was enough. Ms. Zayas reported domestic violence with the father of ACZ beginning in 2009 including physical abuse. Ms. Zayas reported substance use of methamphetamines starting at 18 years old. Investigator asked for the last time she used, she stated a couple years ago. Investigator asked what started the use, she stated being around other people who are a bad influence. She reported receiving treatment through the courts. Investigator asked about the positive tox of amphetamines. Ms. Zayas reported that it was Benadryl. SW asked if Ms. Zayas would complete a urinalysis (UA) for the Department. Ms. Zayas stated no, not without a court order.

7. On 02/21/2020, Investigator Owens received a call from hospital social worker at Auburn Medical. Hospital Social Worker reported that Ms. Zayas was currently receiving care at their hospital and reported the mother as manic. Hospital social worker showed concerns if mother was to refuse a mental health assessment, and return to caring for ACZ.

8. On 2/23/2020, Investigator Owens texted Ms. Zayas regarding FTDM scheduled for 2/24/2020. Ms. Zayas replied the following:

"my daughter is at home with me im sorry but im not sure i understand what the hell you are talking about
Im not attending any meeting of yours I can barely breathe and im in a wheelchair so you can suck my ass and thanks for not helping me when i asked you for help
tell your open investigation to go jump off of a fucking cliff how about that
we will be out of town for the next 2 weeks thanks for letting us know when to take our vacation.
IF YOU DONT STOP HARASSING ME I WILL CALL THE FUCKING POLICE
LEAVE ME THE FUCK ALONE
THE LAST THING I NEED IS SORRY ASS CPS UP MY FUCKING ASS FOR NO FUCKING REASON IM CLEAN BITCH I ALMOST DIED FROM PRE ECLAMPSIA YOU ARE NOT MAKING ANY DECISIONS ON MY DAUGHTER EVER SO GET THAT OUT YOUR FUCKING DUMB ASS BLANK RETARDED ASS HEAD
INVENTING MEETINGS AND SHIT CUZ YOUR BORED BITCH IM SORRY IT DOESNT WORK LIKE THAT
HERE IS YOUR FUCKING SUPPORT SYSTEM BITCH GO JUMP OFF A CLIFF
NOBODY GIVES A FUCK ABOUT CPS GO FUCK YOURSELF AND LEAVE ME THE FUCK ALONE YOU GOT NOTHING HOE

AND YOUR BLOCKED FROM EVER CONTACTING THIS PHONE AGAIN IF YOU COME TO MY DOOR I WILL CALL THE POLICE
DUMB BITCH"

9. On 2/24/2020, the Department held a Family Team Decision Making Meeting (FTDM). Ms. Zayas arrived at DCYF office with ACZ   ACZ sat in play room with Investigator Allen. Ms. Zayas refused to sign release of information (ROI) form for the Department. Investigator went over the intake the department received. Ms. Zayas reported that ACZ "won't be a child of yours" referring to mother's history with the department. Ms. Zayas reported that no one is taking anyone's kid. Ms. Zayas reported that she UA'd for the hospital and it was Benadryl. Ms. Zayas stated that the hospital has UA's that state they are for medical use only not for court use. When stated again that Ms. Zayas tested positive for methamphetamines, she stated "what are you going to do about it". Ms. Zayas reported that she is diagnosed with congestive heart failure. Ms. Zayas reported that she doesn't cooperate with CPS. Ms. Zayas stated she would pee in a cup for the department. Ms. Zayas stated "I almost died, so I'm not going to get high". Investigator Supervisor Black asked if mother would accept services from the department, Ms. Zayas reported "hell no". Ms. Zayas reported that her rights were terminated when she was sober. She stated the department took 3 of her children, "I'm keeping this one". Ms. Zayas agreed to 30 days of UAs at STCP. Ms. Zayas denied any other services at this time to help her through medical diagnoses or mental health needs.

10. ==On 03/10/2020, Investigator Owens received UA result from 03/05/2020 of Ms. Zayas testing positive for amphetamines and methamphetamines.==

11. On 03/13/2020, Investigator Owens informed Ms. Zayas of FTDM being held on 03/16/2020 regarding the positive UA received. Ms. Zayas stated "I am never that dumb if i was dirty why the fuck would i give you my pee think long and hard this is insane". Ms. Zayas then stated "all you have to do is drink 2 spoons of baking soda and your pee is clean in 2 hours everyone knows this why would i pee dirty google it your guys are making this up. I don't know i am even giving you guys the secret but this is how i know you are lying https://www.youtube.com/watch?v=xcF0IFOgDtg".

12. ~~On 03/13/2020, Investigator Owens attempted to locate and interview ▮▮▮▮ as the last known address provided in ACES. An unknown man answered the door stating that ▮▮▮▮ does not live at that home and he doesn't know anyone by that name.~~

13. Mother has nineteen prior screened-in intakes regarding substance use and lack of providing basic needs to her children. Mother has six screened-out intakes. The mother received five prior founded findings including Negligent Treatment/Maltreatment, Medical Neglect, and Physical Abuse.

14. On 02/06/2001, the Department received the following concerns regarding medical neglect: Caller reported that JZ who will be on years old this month was born with significant health problems and was in the NICU for some time. Child has acute asthma and needs to be followed by MD on a regular basis. Mom is not keeping appointments either with NICU folks or others who are assigned to help her. Condition of the child is unknown as no providers are seeing her. She should be on a nebulizer and is not. Mother is on drugs and tries to quit on her own. Does not follow through with treatment issues for herself either. Caller did a home visit and found that a window was broken completely out of the home. Mother was either not there or did not respond to her caller. There was also an eviction notice on the door. Mother received a founded finding for this intake.

15. On 04/27/2001, the Department received the following concerns regarding physical abuse and negligent treatment/maltreatment. Referent reported that there is no electricity to the apartment. The home is nearly devoid of furniture and other household goods. The mother spends little or no money on diapers and other needed items for JZ There is no preparation for the soon to be born. JZ is on SSI apparently due to congenital deficiencies from premature birth. Mother is reported to use drugs on nearly daily basis. Methamphetamines are reported to be used and some alcohol. Mother is seen carrying the child by one arm or one leg, endangering child's libs and subjecting them to deforming forces. Though she reported to no longer have a car, she was seen placing the child in

a vehicle without securing child in a car seat or seat in car. The mother received founded findings for both allegations.

16. On 07/27/2001, the Department received an intake with the following concerns: Mother, Myriam Zayas, was arrested for a warrant and possibly a meth lab in her apartment. Child, JZ (age JZ) is being removed by the police. Mother's sister and child's father is unable to take the child. Another anonymous referent called with additional information about this family. This ref. stated that mother is 7 months pregnant and has had very little prenatal care (1 appointment). The mother states that when this child is born she will sell it over the internet for $30,000. Myriam is producing methamphetamines in her home and there are so many chemicals in the air that the air is a misty blue color. Mother, Myriam also smokes methamphetamine. She will leave the child alone in the home and has picked her up by her arm and thrown her across the room. She also calls the child a "slut". Child was placed into protective custody and mother was taken to jail. Mother received a founded finding.

17. On 01/17/2003, the Department received an intake with the following concerns: Ref is calling to report that her sister Myriam has a 2-month old baby MCZ she is staying at the Union Gospel Mission shelter and had a positive UA this week for Meth. She is being kicked out of the shelter at noon today 01/17/03. Ref is very worried about this baby. Myriam has lost 2 other children by CPS due to drugs. Ref also believes that Myriam is breast feeding the child. Ref told her sister to call her at noon and let her know where she is going to go.

18. On 09/08/2009, the Department received an intake with the following concerns: Referrer reported that Myriam is prostituting on Craigslist and using drugs. Referrer reported while Myriam is prostituting she has people who use drugs babysit MCZ Referrer reported that the babysitter's dog bit MCZ in the face. Referrer reported that MCZ had to go to the hospital for the dog bite. Referrer believes that the same person is babysitting MCZ again. Referrer reported they do not know who has the dog that bit MCZ Referrer reported that the dog previously bit the owner's child in the face. Referrer reported they were in the house on Friday and there was no food in the freezer or in the house. Referrer reported that Myriam was feeding the children cereal for dinner. Referrer is upset because Myriam received her food assistance on Wednesday and had not bought food. Referrer reported Myriam told them they are planning on selling the food assistance for drugs.

19. On 07/07/2014, the Department received an intake with the following concerns: Referrer (ref) is a social worker at the Harborview Women's Clinic calling about the newborn daughter of Myriam Zayas. Ref spoke with assigned SW this morning to advise her of the birth and SW directed her to call intake. Baby was born on CZ at 39.6 weeks, with Apgar's of 8/9. Ref did not have access to the weight of the baby or the results of tox screens on mother and baby, which ref believes are pending. Ref said the baby was delivered at UWMC. Chart note indicates that a hold will be put in place, but ref did not have confirmation that this had occurred as yet. Ref said that, per chart, the mother used meth during her pregnancy. Her use was particularly heavy during the first and second trimesters. Mother admits to meth use, but at a lower level than what is documented in the chart. Mother had "inconsistent" prenatal care at Swedish, where she had UA's that were positive for meth, but then transferred to Harborview at 39.1 weeks' pregnancy. Ref said it is highly unusual that a woman would change her prenatal care provider with the baby due at any time.

20. Per intake of 07/03/2014, called in by assigned Child Family Welfare Services (CFWS) Social Worker (SW): Myriam Zayas is currently restricted to her bed until the baby delivers and she is at Harborview Hospital. The recommendation is Myriam to remain in the hospital until the child is born. Placement for the newborn has been arranged. Myriam was at Swedish Hospital for about a week and a half until yesterday 07/02/2014. Myriam left Swedish Hospital against medical advice and admitted herself to Harborview Hospital. Myriam had been in inpatient treatment for substance abuse at Swedish. Myriam left Swedish because she did not want the hospital to have access to her substance abuse records. Myriam believes she will be taking the newborn home with her but that is not the case plan. Myriam has two open dependencies in King and Pierce County regarding JZ and MCZ Myriam was in inpatient treatment at Swedish in December 2013. The discharge

recommendation was for a 1-2 year, long term residential treatment facility. Myriam did not agree with the recommendation and instead chose to go to Union Gospel Mission's Hope Place. Hope Place although a good program does not meet criteria as a residential treatment program. Myriam did not engage in any further supportive services other than Hope Place and relapsed in May 2014. Myriam has been using since the age of 18 and supports herself through prostitution. Myriam reports she relapsed in May because if she had waited until the baby was born CPS would take the child. The recommendation for Myriam when she left Swedish was random urinalysis 3 times weekly. Myriam shared with the CDP that she can beat random urinalysis if the tests are less frequent. The CDP again recommended long term residential treatment for Myriam but she again refuses. Myriam understands she would have the option of taking her baby with her to treatment. Myriam reports she won't go because she can't take **JZ** with her and she wants **JZ** home. **JZ** does not want to return home to her mother Myriam. The current dependency on **JZ** is her 3rd and ▓▓▓▓ wants permanency. Myriam has been telling the social worker at Harborview she will not be returning to Hope Place after the birth. Myriam plans to leave the hospital with the baby and get her own apartment. Myriam reports the presumed father of the newborn is currently in a Washington State Correctional Facility. Myriam states she wants the presumed father to have a relationship with the newborn. There is a 10 year no contact order between Myriam and the presumed father due to his trying to kill Myriam. The presumed father tried to strangle Myriam in 2009 in front of **JZ** and **MCZ**. The presumed father is identified in FAMLINK as Maniac Unknown as that is his alias. The presumed father's actual name is ▓▓▓▓▓▓. The Hope Place case manager has spoken to referrer and has expressed concern about Myriam. Case manager reports when Myriam leaves the building she risks relapse due to her inability to resist drugs use. Myriam will not be breastfeeding as she has implants and medically it has been recommended she not breastfeed.

21. On 11/02/2016, the Department received the following concerns: **ACZ** years old) recently was returned to parent on October 28, 2015. Referrer has been in the home about a month ago and found that there is minimal food for **ACZ**. There is oatmeal and biscuits and spoiled milk in the refrigerator. **ACZ** diaper was full. That was a week day where child goes to the daycare. The house is messy. Garbage is overflowing and no clean dishes. There are different people coming into the house. Mother would leave **ACZ** alone in the living room and stay in the bedroom with friend/s for about 30 to 45 minutes.

22. On 11/20/2017, the Department received the following concerns: The referrer was recently at the home. He responded to an ad from back page and met the mother at her apartment. They went into her room and did sexual things and smoked methamphetamines together. The referrer saw a little girl sleeping on the floor under a blanket in the mother's room and there was another child in the apartment. They were both exposed to the methamphetamines smoke. The referrer is very concerned that the mother would do sexual things with men with her children present and was concerned that the mother would smoke methamphetamines in the apartment with her children present. The referrer reports that on his way into the apartment was another man leaving. On his way out there was another man coming in.

23. On 06/01/2019, the Department received the following concerns from Officer Robinson with Kent Police Department wrote in her law enforcement report: "I then spoke with **MCZ** who stated the following: "He asked ▓▓▓▓ to come pick him up because he was not happy at home with his mother, He does not like the fact that he has to babysit his sister all the time. Approximately 1 month before our conversation **MCZ** was in Myriam's room, when he found methamphetamine and a pipe inside her drawer. He recognized the items, because he has friends who use it. He decided to snort the methamphetamine in his mother's drawer, and did not enjoy the sensation. Almost every month Myriam sells her $500.00 in food stamps. When she sells them she gives **MCZ** $40.00! When men text his mother's phone asking for sex, they do not offer her anything to her in return other than "their love".

24. On 07/15/2019, the Department received the following concerns: Referrer originally called for ARY because **MCZ** is using hallucinating drugs and marijuana. Referrer mentioned talking to ▓▓▓▓ who was the CPS worker for **MCZ**. Referrer was told to call CPS for a YAR due to **MCZ** using drugs.

Referrer was upset that ▮▮▮ knew MCZ was using marijuana, but did not know the mother was supplying MCZ with marijuana. Referrer did not understand why the Referrer was not informed of this. Referrer was unable to say what kind of hallucinating drugs MCZ is using. On 7/12, Referrer picked up MCZ and his friends from somewhere and they "weren't there mentally". Referrer waited for MCZ to be sober and had sent him to his mother's house. When the Referrer was at the home, MCZ was in his room with the door locked. When the Referrer was able to go inside the bedroom, Referrer saw marijuana "crumbs" on a plate. Referrer stated the stems were still on the plate. Referrer found out that the mother was providing MCZ with marijuana for pain relief due to being hit by a car on the 12th. Referrer noted MCZ knee was bruised and he had scrapes on his body from the car accident.

25. The mother has criminal history including: Conspire to Violate Controlled Substances, Control Substance Violation Section A, Harassment, Prostitution, and Criminal Trespassing.

26. The alleged father has significant criminal history including: Felony Violation of No Contact Order, Possession of Drug Paraphernalia, multiple Assault 4th Degree, Harassment, Assault 4th degree- DV, Attempt to Elude Police, Assault 3- Law Enforcement Officer, Possession of Stolen Vehicle, Possession of Stolen Property, Riot Deadly Weapon Felony, Unlawful Imprisonment, Criminal Attempt, Domestic Violence, Escape 2nd Degree, multiple Control Substances Violation Section D, multiple Control Substances Violation Section A, Control Substances Violation section E, Theft 3, Reckless Endangerment, Malicious Mischief 3rd Degree, and multiple Burglary 2nd Degree. There is multiple active No Contact Orders and Protections Orders with ▮▮▮ as the respondent.

27. At this time, the Department contends that there are no available parents that can appropriately and safely parent ACZ. The mother, Ms. Zayas has a long-standing drug addiction issues that remains untreated. Ms. Zayas tested positive for methamphetamines on 03/05/2020. The mother has refused any services from the Department outside of UA's. The mother has prior dependencies based upon the same safety threats to her children that are described in the petition above. Paternity needs to be established, as there is no father listed on the birth certificate. The alleged father, ▮▮▮ also is not the child's primary parent. At this time, the Department is requesting a pick up order and shelter care hearing due to the mother and alleged father's inabilities to appropriately and safely parent ACZ.

Efforts to provide services to the family to prevent or eliminate the need for removal of the child from their home include the following: DCYF held an FTDM On 02/24/2020, the mother refused any other services than completing UA's for the Department. The mother reported that she is diagnosed with congestive heart failure and can die if she was to get high again. Mother tested positive for methamphetamines on 03/05/2020. Mother was previously offered Homebuilders in July 2019, mother declined services from assigned worker. At this time, there are no additional services the Department can place into the home to remedy the safety threats to the child. The department is requesting licensed foster care placement until a relative or suitable other can be located and approved by the Department.

At this time, there are no services available to prevent removal of the child and an out of home placement. There are no services that the Department can place into the home to remedy the safety threats to the child. The Department is requesting a licensed foster care placement, until an approved relative or suitable other can be located by the Department.

**Amended to reflect that ▮▮▮ is not the biological father.

1.7   ☐   Educational Liaison

The child meets the criteria for appointment of an educational liaison. DCYF recommends that the court appoint an educational liaison.

## II. Relief Requested

The petitioner requests that the court find the child dependent, enter an order of dependency, and grant the relief below:

- ☒ enter a disposition order that includes placement, parent-child and sibling visitation, and services.
- ☐ appoint an educational liaison.
- ☒ order a parent to cooperate with the establishment of paternity.
- ☒ order a parent to sign releases for information.
- ☐ Other:

## III. Certification

I declare under penalty of perjury under the laws of the State of Washington that the foregoing representations are true and correct.

Signed at ___Kent___ (City), Washington on ___03/16/2020___ (Date).

_____            Quyet Le for
Signature of SW                                   Kelsey Owens
                                                          Print Name

_____            Kejana Black
Signature of SW supervisor                Print Name

Reviewed/approved on March 16, 2020 by:

_____
Derek Paul Leuzzi
Assistant Attorney General
WSBA # 45508